IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF:<br>LAVERNE MANGUM,<br><br>        Debtor.<br><br>MARILYN O. MARSHALL, as<br>Standing Trustee,<br><br>        Appellant,<br><br>v.<br><br>LAVERNE MANGUM,<br><br>        Appellee. | Appeal from the United<br>States Bankruptcy Court<br>No. 04 B 41017<br>No. 06 A 879<br><br>Hon. Carol A. Doyle,<br>Bankruptcy Judge<br><br><br><br>No. 06 C 3847 |

## MEMORANDUM OPINION AND ORDER

     This bankruptcy appeal concerns the question of whether a debtor in a Chapter 13 proceeding may sell her personal residence and then discharge her case by using some of the proceeds to make a lump sum payment covering the remaining monthly payments due under the debtor's confirmed plan. The parties presented this issue to the bankruptcy court on uncontested facts. The bankruptcy court ruled in the debtor's favor, ordering the trustee to use the proceeds of the sale to pay off the remaining payments and then release the excess proceeds to the debtor. The

bankruptcy court subsequently discharged the debtor and denied a stay. The trustee appeals.

On November 4, 2004, debtor Laverne Mangum filed for Chapter 13 protection. On February 13, 2005, debtor's plan was confirmed. It provided that she make 36 monthly payments of $600 and that unsecured creditors would be paid 10% of the allowed amount of their claims. The $600 figure represented debtor's then-projected disposable income during the period of the plan. See 11 U.S.C. § 1325(b)(1)(B). Debtor proceeded to make payments under the plan. Paragraph D(2)(b) of the plan contains a standard provision that: "The plan will conclude, prior to the end of the initial term at such time as all allowed claims are paid in full, with any interest required by the plan."

On September 1, 2005, the bankruptcy court approved debtor's sale of her personal residence, which was then consummated. The trustee, Marilyn Marshall, received $34,075.70 in net proceeds from the sale and debtor stopped making payments under the plan. The trustee used some of the proceeds to pay off creditors, including the percentage of allowed amounts designated for unsecured creditors. The trustee refused to turn over the remaining proceeds, approximately $18,000, unless debtor agreed that some of the proceeds would be used to pay the secured creditors 100% of their allowed amounts. This would have required that approximately $1,800 additional be paid to the

unsecured creditors. Debtor filed an adversary proceeding in which she requested that she be discharged and the trustee be required to turn over the remaining funds to debtor. The bankruptcy court granted the requested relief, including ordering that debtor be discharged. See In re Mangum, 343 B.R. 185 (Bankr. N.D. Ill. 2006) ("Mangum"). The trustee requested a stay pending appeal, but that was denied by the bankruptcy court. A stay was not requested before this court. Debtor has been discharged and the trustee turned over the excess proceeds to debtor. No motion to amend the plan was filed by either side either before or after the discharge.

Debtor argued that the trustee untimely filed the notice of appeal for this case, but that contention has previously been rejected. See In re Mangum, 2006 WL 3626775 (Dec. 7, 2006). Debtor also argues that this appeal is moot because she has already been discharged. If a party does not obtain a stay, bankruptcy appeals will be rendered moot if, in light of changed circumstances and the equities of the case, no effective relief can be fashioned should the appellant succeed. See United States v. Segal, 432 F.3d 767, 773-74 (7th Cir. 2005); Matter of Specialty Equipment Cos., 3 F.3d 1043, 1047-48 (7th Cir. 1993); In re CGI Industries, Inc., 27 F.3d 296, 299 (7th Cir. 1994) (quoting In re Stadium Management Corp., 895 F.2d 845, 847-48 (1st Cir. 1990)); Focus Real Estate Equities Co. v. 3400 Dundee

Associates, 1990 WL 251725 *2-3 (N.D. Ill. Dec. 24, 1990). For example, challenges to a consummated reorganization plan will be moot unless there are compelling reasons to disturb the new relations that have resulted, see Segal, supra; Specialty Equipment, supra, and sales of estate property to third parties will not be disturbed, see CGI, supra. The present situation is not one in which effective relief cannot be granted. Should the trustee succeed here and on remand, all that would be required would be that debtor return some of the monetary proceeds and they be redistributed to the unsecured creditors. This is not a circumstance where the case is rendered moot by the failure to obtain a stay.

Debtor also cites to 11 U.S.C. § 1328(e). That statute provides: "On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if--(1) such discharge was obtained by debtor through fraud; and (2) the requesting party did not know of such fraud until after such discharge was granted." While that section limits a bankruptcy court's basis for revoking a discharge after it has been entered, that statute should not also be read as limiting a reviewing court's power to consider an appeal challenging the merits of a bankruptcy's court grant of a discharge. See In re Parr, 222 B.R. 337, 339 (Bankr. D. Minn. 1998) ("discharge works

a conclusive reconfiguration of parties' legal rights and liabilities, subject only to timely appeal or to revocation under 11 U.S.C. § 1328(e)") (dictum). Moreover, a remand in this case following a successful appeal would not necessarily require that the discharge be revoked. It might only be necessary to modify the discharge order to redistribute some of the sales proceeds. Cf. In re Midkiff, 342 F.3d 1194, 1198-99 (10th Cir. 2003) ("vacating" discharge to provide for the distribution of additional disposable income received prior to the end of the plan period, but not discovered until after the end of the plan period, left the discharge in place and therefore was not a revocation of the discharge under § 1328(e)). Section 1328(e) does not prevent this court from reviewing the bankruptcy court's grant of a discharge.

On the merits, the trustee contends that it was inconsistent with 11 U.S.C. § 1325(b)(1) and the terms of the plan to permit debtor to be discharged in less than 36 months without paying unsecured claims in full. She contends that, despite there being no motion to amend the plan, the bankruptcy court essentially amended the plan. According to the trustee, proper consideration of an amendment would have required a projection of disposable income as of the time of the amendment which would have required taking into consideration the sales proceeds. The trustee also contends that the proceeds of the

sale were property of the estate and therefore must be first used to pay off allowed claims.

The language of § D of the plan is standard language taken from the bankruptcy court's Model Chapter 13 Plan. That section provides:

> 1. Initial plan term. Debtor will pay the Trustee $600 monthly for 36 months, for total payments, during the initial plan term, of $21,600.
> 2. Adjustments to initial term. (a) If the amount paid by debtor to the trustee during the initial plan term does not permit payment of general unsecured claims as specified in Paragraphs 8 and 9 of Section E, then debtor shall make additional monthly payments, during the maximum plan term allowed by law, sufficient to permit the specified payments. (b) The plan will conclude, prior to the end of the initial term, at such time as all allowed claims are paid in full, with any interest required by the plan.

Paragraph D(2)(b) sets forth one basis for concluding the plan at an earlier date than set forth in ¶ D(1). It does not state that this is the only basis for concluding the plan at an earlier date and the trustee points to no other provision of the plan limiting the grounds for early conclusion of the plan. The Bankruptcy Court construed ¶ D(2)(b) as a nonexclusive provision. Mangum, 343 B.R. at 187. That is consistent with the language of the plan. At least one other bankruptcy judge in this district has similarly construed this language. In re Forte, 341 B.R. 859, 863-64 (Bankr. N.D. Ill. 2005).

Permitting the payments under the plan to be made in a lump sum is also consistent with ¶ D(1). While this paragraph refers to 36 monthly payments of $600, it also refers to the payments as "total payments, during the initial plan term, of $21,600." Mangum complied with this requirement. She made a number of $600 payments then one lump sum payment that brought the total to $21,600, all of which were paid during the term of the plan. By paying the total amount in less time than required, the creditors received a benefit compared to the whole amount being paid out over the full three years.

Permitting the required payments to be paid out in less than 36 months is not inconsistent with § 1325(b)(1)(B). One possibility is that a Chapter 13 plan will pay all claims in full. That is the alternative set forth in 11 U.S.C. § 1325(b)(1)(A). When, as in the present case, that is not provided for in the plan, the § 1325(b)(1)(B) alternative must be satisfied, which is: "the plan provides that all of debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." The trustee did not object to the plan when it was confirmed and there is no present contention that, as of the time of confirmation, $21,600 was an unreasonable projection of debtor's expected disposable income over the pertinent time period.

Section 1325(b)(1)(A) only requires that the amount of payments be based on the three-year projection; it does not require that the payments actually be made over the entire three years, cf. In re Mendoza, 274 B.R. 522, 526 (Bankr. D. Ariz. 2002) (plan can provide that three years of projected disposable income be paid out over a period longer than three years). Nor does it require that actual disposable income during the three-year period match the projection made at the time of confirmation. In re Fuger, 347 B.R. 94, 98 (Bankr. D. Utah 2006); In re Richardson, 283 B.R. 783, 798 (Bankr. D. Kan. 2002).

Prior to the completion of payments, the trustee, debtor, or a creditor may move to modify a confirmed Chapter 13 plan, even without changed circumstances. 11 U.S.C. § 1329(a); Matter of Witkowski, 16 F.3d 739, 742-44 (7th Cir. 1994); In re Turnbull, 350 B.R. 429, 433-34 (Bankr. N.D. Ill. 2006); In re Sounakhene, 249 B.R. 801, 803 (Bankr. S.D. Cal. 2000).[1] Here, the trustee made no such motion prior to all payments being made and debtor being discharged. Since no party made a timely motion to modify, the plan could not have been modified to require larger payments to the unsecured creditors. 11 U.S.C. § 1329(a); Forte, 341 B.R. at 862-63; Richardson, 283 B.R. at 803.

---

[1] At least one other circuit holds that there must be a substantial change of circumstances. See In re Murphy, ___ F.3d ___, 2007 WL 117746 *4 (4th Cir. Jan. 18, 2007).

Moreover, the specific ground that the trustee now contends would be a basis for modification is without merit. She contends that the proceeds of the sale should be considered additional disposal income, thereby requiring larger payments to the unsecured creditors. But even assuming that the disposable income standard applies to modification requests,[2] this would not be a basis for modification because proceeds from the sale of plaintiff's home are not disposable income. In re Golek, 308 B.R. 332, 338-39 (Bankr. N.D. Ill. April 15, 2004); In re Ash'shadi, 2005 WL 1105039 *2 (Bankr. E.D. Mich. May 6, 2005); In re Euler, 251 B.R. 740, 748 (Bankr. M.D. Fla. 2000); In re Burgie, 239 B.R. 406, 409-410 (B.A.P. 9th Cir. 1999).[3]

The trustee did not request an amendment of the plan, but it is also true that debtor did not request that the plan be amended. As previously discussed, the plan provided for the payment of $21,600 within the term of the plan. Plaintiff's lump sum payment satisfied that requirement. Therefore, the plan was not amended, so no motion to amend was required and the

---

[2]Courts have disagreed as to whether the disposable income test applies to motions to modify a Chapter 13 plan. See In re Sunahara, 326 B.R. 768, 774-82 (B.A.P. 9th Cir. 2005); Sounakhene, 249 B.R. at 804-05.

[3]Even if not disposable income, the proceeds may have supported a modification of the plan based on an unanticipated change in financial condition. Cf. Murphy, ___ F.3d at ___, 2007 WL 117746 at *6-7. Since no timely motion to modify was made, that issue need not be considered.

bankruptcy court did not act without authority. Additionally, it is noted that this construction of the specific terms of Mangum's plan is consistent with the apparently majority view that an early payoff of required payments under a Chapter 13 Plan is not a modification of a Chapter 13 plan. See In re Brown, 332 B.R. 562, 569-70 (Bankr. N.D. Ill. 2005); Matter of Casper, 154 B.R. 243, 246-47 (N.D. Ill. 1993); In re Brumm, 344 B.R. 795, 801-04 (Bankr. N.D.W. Va. 2006); Fuger, 347 B.R. at 101 n.32; In re Miller, 325 B.R. 539, 542 (Bankr. W.D. Pa. 2005); In re Smith, 237 B.R. 621, 626 (Bankr. E.D. Tex. 1999). Contra In re Turek, 346 B.R. 350, 355-56 (Bankr. M.D. Pa. 2006); In re Keller, 329 B.R. 697, 699-700 (Bankr. E.D. Cal. 2005).

The trustee also contends that the sales proceeds belong to the estate and therefore should have been used to pay creditors before being distributed to debtor. The cases cited by the trustee in support of this contention, however, both involved situations in which there was a requested modification of the plan in light of the sale or refinancing of debtor's residence. See Barbosa v. Solomon, 235 F.3d 31 (1st Cir. 2000) (trustee requested modification); In re Morgan, 299 B.R. 118 (Bankr. D. Md. 2003) (debtor requested modification). As previously discussed, the present case is not a situation in which debtor was required to request a modification and the trustee never requested a modification; the trustee only opposed a motion to

discharge. Since no modification was properly requested, it is unnecessary to determine whether the sales proceeds were property of the estate that could have supported a modification of the plan.

For the foregoing reasons, the decision of the bankruptcy court will be affirmed.

IT IS THEREFORE ORDERED that the decision of the bankruptcy court in adversary Proceeding 06 A 879 is affirmed. The Clerk of the Court is directed to enter a judgment in favor of appellee and against appellant affirming the decision of the bankruptcy court in adversary proceeding 06 A 879.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: FEBRUARY 12, 2007